Randy Nussbaum (SBN 006417)
Randy.Nussbaum@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
Sierra M. Minder (SBN 035795)
Sierra.Minder@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610
*Proposed Attorneys for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| WOODBRIDGE HOSPITALITY, L.L.C., | Case No. 2:21-bk-04096-PS |
| Debtor. | **DECLARATION OF MICHAEL HARRIS** |

I, Michael Harris, hereby declare under penalty of perjury of the laws of the United States of America, as follows:

1. I am an adult resident of Maricopa County, Arizona.

2. I am a founder, Vice President and Partner of Ledgestone Hospitality, LLC ("Ledgestone").

3. I am authorized and competent to make this declaration in support of Woodbridge Hospitality, LLC's ("Debtor") *Motion to Retain Ledgestone Hospitality, LLC as Manager and Operator of Hotel* ("Motion to Retain Hotel Operator").

4. The statements contained herein are accurate to the best of my knowledge and,

unless otherwise indicated, are based upon my personal knowledge and/or knowledge that I have gained from my review of the Debtor's books and records that are kept in the ordinary course of business and my communications with the Debtor's and Ledgestone employees who obtain their information from the Debtor's books and records. Any legal conclusions contained herein are made based upon my understanding of the law and pertinent circumstances.

5. I have read and am familiar with the Motion to Retain Hotel Operator and its contents, and I assisted in the preparation of such motion.

6. I am also familiar with the Debtor's (a) *Motion for Order Authorizing Debtor's Use of Cash Collateral to Pay Operating Expenses and Pre-Petition TPT Taxes* ("Cash Collateral Motion") and (b) *Motion for Order Authorizing Debtor to Pay Pre-Petition Wages* ("Wage Motion"), and I assisted in the preparation of those motions.

7. Ledgestone currently manages and operates the Debtor's hotel located generally at 9880 North Scottsdale Road in Scottsdale, Arizona (the "Hotel"), pursuant to the *Management Agreement* dated February 12, 2020 ("Management Agreement") between the Debtor and Ledgestone. A copy of the Management Agreement is attached to the Statement of Facts as Exhibit "A."

8. Ledgestone is not affiliated, in any way, with the Debtor, other than through the Management Agreement.

9. Ledgestone has extensive hotel management experience and expertise and has been managing and operating the Hotel for the Debtor since February 2019.

10. The terms and conditions of the Management Agreement are reasonable and consistent with industry standards.

**The Debtor**

11. The Debtor is an Arizona limited liability company formed in December 2002.

12. The Debtor's members are the Sukhbinder & Rupinder Khangura Family Revocable Trust dated May 19, 2008 (the "Suky & Rupi Trust") and the Jasbir Khangura Revocable Trust dated July 13, 2013 (the "Jas Trust") (collectively, the "Owners").

13. The beneficiaries of the Suky & Rupi Trust are Sukhbinder Khangura ("Suky") and Rupinder Khangura ("Rupi"), and the beneficiary of the Jas Trust is Jasbir Khangura ("Jas").

14. On May 26, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona.

15. The Debtor is authorized to operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.[1]

**The Debtor's Property**

16. The Debtor owns the Suites on Scottsdale hotel located generally at 9880 North Scottsdale Road in Scottsdale, Arizona (the "Hotel").

17. As discussed below, Ledgestone has been managing and operating the Hotel for the Debtor since January 2019.

18. The Debtor acquired the Hotel in February 2003 and, until December 30, 2020, operated the Hotel as a Homewood Suites by Hilton pursuant to a Franchise License Agreement with Promus Hotels, Inc., a subsidiary of Hilton Hotels Corporation ("HHC"), dated February 14, 2003 (the "Franchise Agreement").

19. The Franchise Agreement, which was set to expire in February 2023 by its own terms, was terminated by HHC on December 30, 2020.

20. Prior to the termination of the Franchise Agreement in late December 2020, the Debtor did not fully perform all of the "property improvement program" ("PIP") requirements under the HHC Franchise Agreement and, therefore, did not pass several HHC "Quality Assurance" inspections.

21. Even though the Debtor proposed to pay between $6 million and $10 million to improve the Hotel and satisfy the PIP requirements, HHC indicated to the Debtor that it

---

[1] Unless otherwise indicated, references to statutory sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

was not interested in extending the Franchise Agreement beyond its expiration in February 2023. Consequently, the Debtor chose not to expend the capital to make the PIP improvements.

22. Therefore, HHC terminated the Franchise Agreement effective December 30, 2020.

23. The Hotel has 114 guest suites, of which approximately 95 are currently configured for guests (the rest are used as office and/or storage space) with a total of approximately 151 beds, two corporate meeting rooms, a business center, an outdoor pool, a fitness center, and other guest amenities, including a breakfast kitchen area.

24. As of the Petition Date, the Debtor had twelve employees, although the number of employees fluctuates with the seasons and general employee attrition.

25. As discussed below, the number of employees will likely be increased upon implementation of the Endeavors Contract.

26. Historically, the Debtor operated profitably. In fact, in 2019, under Ledgestone's management, the Debtor had revenues of approximately $3,831,000 and $819,203 in annual profit (after interest).

27. Like many industries, the hospitality industry in general, and the Hotel specifically, were significantly adversely affected by the global COVID-19 pandemic, and the Debtor's operations and revenues suffered greatly in 2020. In fact, the Debtor's revenues declined by approximately 69% in 2020.

28. As discussed below, on December 8, 2020, the Debtor entered into a *Purchase and Sale Agreement* ("PSA") providing for the sale of the Hotel to SRE, who intends to convert the Hotel to apartments.

29. Between December 30, 2020 and approximately May 22, 2021, the Debtor operated the Hotel as an independent hotel.

30. As discussed below, on May 13, 2021, the Debtor entered into that certain *Subcontract Agreement in Support of Department of Homeland Security (DHS), Immigration*

4
3043177.v3
Case 2:21-bk-04096-BKM    Doc 34    Filed 06/04/21    Entered 06/04/21 19:19:44    Desc
Main Document    Page 4 of 10

*and Customs Enforcement (ICE) Emergency Family Staging Centers (EFCS)* (together with that certain *Modification of Subcontract Agreement (Modification 01)* dated May 28, 2021 (the "Modification"), the "Endeavors Contract")) with Family Endeavors, Inc., a Texas non-profit corporation d/b/a San Antonio Family Endeavors ("Endeavors"), which provides for the operation of the Hotel as a temporary shelter and emergency family staging center for non-citizen families under the supervision of the Department of Homeland Security, Immigration and Customs Enforcement (the "Government").

31. Endeavors began housing families at the Hotel on or about May 28, 2021.

**Ledgestone Hospitality**

32. In February 2019, after discovering AHI's failure to file TPT tax returns and pay TPT taxes, the Debtor removed AHI and retained Ledgestone to manage the Hotel.

33. Specifically, the Debtor and Ledgestone are parties to that certain *Management Agreement* dated February 12, 2020 ("Management Agreement"). A copy of the Management Agreement is attached to the Statement of Facts as Exhibit "A."

34. Although Ledgestone had been operating the Hotel since February 2019, Ledgestone and the Debtor entered into the current Management Agreement in February 2020 to reflect certain changes in their arrangement and to provide for a term of up to three years.

**Ledgestone's Experience and Expertise**

35. Ledgestone was formed in, and has been expertly managing hotels since, 2009. A copy of Ledgestone's presentation deck describing Ledgestone's history, team, services, and experience is attached to the Statement of Facts as Exhibit "B" and is incorporated herein by this reference.

36. Ledgestone currently operates 30 hotels and has been recognized as an award-winning hospitality management company by Hilton, IHG, Marriott, Wyndham, and others. Indeed, Ledgestone hotels are the recipients of the coveted Hilton Lighthouse Award (top 5% of brand), several Hilton Circle of Excellence Awards (top 10% of brand), IHG Quality

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3043177.v3

Excellence Award, IHG 5 of 5 Metrics Award and was recently named the IHG 2020 Newcomer of the Year Award with its Arizona operation.

37. While Ledgestone is based out of Chanhassen, Minnesota, a suburb of Minneapolis, it has a western regional office in Phoenix, Arizona, with three Regional Directors operating out of Phoenix. In fact, Ledgestone manages a total of eight hotels in Arizona, including the Hotel and three other hotels owned by entities associated with the Debtor's owners and four other hotels owned by three other owners.

38. Prior to forming Ledgestone in 2009, Michael Harris ("Harris") as Senior Regional Director, and Kenneth Garvin ("Garvin") as Vice President, headed the management division for a small national hotel brand (204 hotels) out of Minneapolis, MN for a little over a decade.

39. Harris and Garvin have over 60 years of combined hospitality management experience.

40. Over the past 30 years, Harris and Garvin, and other professionals employed by Ledgestone, have amassed experience on all sides of the hospitality industry including as franchisees, franchisors, consultants, and management companies.

41. While Ledgestone approaches management from a return-on-investment perspective, its also delivers award-winning brand results. It has a history of significantly increasing both revenues and profitability.

42. Further, Ledgestone has extensive experience managing financial and operational turnarounds in the hospitality industry, including managing financially troubled hotels and experience assisting lenders with troubled assets, CMBS loans, workouts, and receiverships. Ledgestone has also been retained by national hotel lenders for underwriting purposes.

43. Ledgestone is an approved management company for almost all national hotel brands including IHG, HHC, Marriott, Choice, Country Inn & Suites, Wyndham, Best Western, etc.

44. Ledgestone follows strict USALI accounting practices, and directly employs a CPA (inactive) and several accountants in its offices.

45. Ledgestone has established a national footprint with properties from California to Wisconsin and has recently won top HHC, IHG and Wyndham awards for hotels in its portfolio.

46. Ledgestone is a complete turn-key management company. Its principals are experts in Operations, Sales & Marketing, Accounting, Guest Satisfaction, Revenue Optimization, Food & Beverage, and every other facet of professional hospitality management, including the capability to fully implement any brand required PIP's (Property Improvement Plan), where required.

47. Harris is the primary point of contact for the Debtor with respect to the Hotel.

48. Harris is the vice president, co-founder, partner, and head of operations for Ledgestone and lives in Arizona.

49. In addition to managing and operating the Hotel for the Debtor, Ledgestone manages and operates three other hotels in Arizona owned by entities affiliated with the Debtor, including the hotel owned by Crestwood. The Bankruptcy Court in the Crestwood Chapter 11 case recently entered an order authorizing Ledgestone to manage and operate that hotel.

50. Having operated and managed the Hotel for over two years, Ledgestone and Harris are very familiar with the Hotel and its operations and with the Debtor and its financial issues and challenges.

**The Management Agreement Between Ledgestone and the Debtor**

51. Generally, the Management Agreement provides that Ledgestone shall have the "full power, authority, discretion and control in all matters relating to the management, operation and maintenance of the [Hotel] <u>subject to Owner prior approval</u> . . . ." Management Agreement at § 1.1 (emphasis added).

52. The initial term of the Management Agreement is one year with an automatic

renewal for an additional two years. Management Agreement at § 3.1.

53. Pursuant to the Management Agreement, Ledgestone is entitled to be paid a monthly management fee equal to the sum of two and one-half percent of the Room Revenue (as that term is defined in the Management Agreement) for the preceding month plus reimbursement of direct expenses incurred by Ledgestone for any third-party payroll processing services and yearly accounting licensing software fees. Management Agreement at § 4.

54. Notably, the industry standard for hotel management fees is between 3% and 4% of room revenue plus additional accounting, revenue management and other fees. Ledgestone's fee is reduced due to its management and operation of four hotels owned by entities associated with the Debtor's owners.

55. Among other duties, Ledgestone is required to submit to the Debtor's owners an annual plan for the Hotel which includes an operating budget, capital expenditures budget and marketing plan. Management Agreement at § 5.1.

56. Additionally, pursuant to the Management Agreement, Ledgestone is responsible for, at the Debtor's expense, among other things, the maintenance and repair of the Hotel; the replacement of equipment, furniture, furnishings, and improvements relating to the Hotel; entering into service and vendor contracts for goods and services with third parties relating to the operation of the Hotel; applying for, obtaining and maintaining any necessary licenses and permits for the operation of the Hotel; compliance with governmental laws, rules and regulations; compliance with Franchisor requirements; the selection, training, supervision, and termination of employees; and maximizing profits for the Debtor. Management Agreement at §§ 5 and 7.

57. Pursuant to the Management Agreement, the Debtor is obligated to provide, at its expense, among other things, operating supplies for the management and operation of the Hotel, and is required to pay all costs of maintaining, operating, improving, and insuring the Hotel. Management Agreement at §§ 6 and 8.

58. Moreover, pursuant § 6.5 of the Management Agreement, the Debtor has agreed to indemnify Ledgestone and its managers, principals, and employees, and hold them harmless from certain claims and liabilities. Specifically, § 6.5 of the Management Agreement provides as follows:

> 6.5 <u>Indemnification</u>. The Owner hereby agrees to indemnify and hold the Operator, and its managers, principals and employees of the Operator, harmless from any and all costs, expenses, attorneys' fees, suits, liabilities, judgments, damages and claims in connection with the management, maintenance and/or operation of the Property (including the loss of use hereof following any damage, injury or destruction), arising from any cause other than for fraud, negligence intentional misconduct or a breach of any provision of this Agreement on the part of the Operator or such other persons and entities. The Operator shall indemnify and hold harmless Owner and its principals, managers and employees from any and all costs, expenses, attorneys' fees, suits, liabilities, judgments, damages and claims in connection with the management, maintenance and/or operation of the Property (including the loss of use thereof following any damage, injury or destruction), arising from any cause for which Operator's actions are fraudulent, negligent, intentional misconduct or a breach of any provision of this Agreement. The provisions of this section shall survive any expiration or termination and shall be binding upon Owner, its successors and assigns, including any successor or assign who becomes the owner of the Property after the effective date of any such expiration or termination.

59. The Management Agreement specifically provides that the relationship between the Debtor and Ledgestone is that of agent/representative and principal, and that there is no partnership or joint venture relationship between the parties. Management Agreement at §§ 12.2 and 12.3.

**Ledgestone's Performance Under the Management Agreement**

60. Since its initial retention by the Debtor in February 2019, Ledgestone has professionally, efficiently, and properly operated and managed the Hotel pursuant to the terms and requirements of the Management Agreement.

61. Ledgestone has also worked with and assisted the Debtor in connection with, among other things, its agreement with ADOR concerning the delinquent sales taxes and its negotiations with the Lender regarding the alleged defaults under the Loan.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

3043177.v3

62. Ledgestone has extensive and intimate knowledge of the Debtor's business, financial affairs, operations, and capital and debt structure.

63. Given its management role for the past two years, Ledgestone has been instrumental in assisting the Debtor and its bankruptcy counsel in preparing the Debtor for this bankruptcy filing, including the preparation of first day motions, schedules of assets and liabilities and other necessary administrative matters in the bankruptcy case.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: June 4, 2021.

        */s/ Michael Harris*
        Michael Harris